934 So.2d 564 (2006)
A.M.W., a Child, Appellant,
v.
STATE of Florida, Appellee.
No. 5D05-1517.
District Court of Appeal of Florida, Fifth District.
June 30, 2006.
*566 James S. Purdy, Public Defender, and Robert E. Wildridge, Assistant Public Defender, Daytona Beach, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Pamela J. Koller, Assistant Attorney General, Daytona Beach, for Appellee.
THOMPSON, J.
A.M.W. appeals his adjudication of delinquency and sentencing for: (1) armed burglary of a dwelling with a firearm;[1] (2) grand theft of a firearm;[2] (3) the lesser-included offense of third-degree grand theft;[3] (4) third-degree grand theft of a motor vehicle;[4] and (5) dealing in stolen property.[5] The court committed A.M.W. to a juvenile detention facility at restrictiveness level eight until his nineteenth birthday. A.M.W. raises two points on appeal: (1) The court erred by denying his motion for judgment of acquittal with respect to armed burglary and grand theft of a firearm; and (2) double jeopardy precludes his adjudications for dealing in stolen property, grand theft of a firearm, grand theft auto and third-degree grand theft. We affirm as to his first argument, and reverse in part as to the second.
The victim, Lambert Sayles, testified that a burglar broke into his house and stole a VCR, Playstation, camcorder, television, pistol, ammunition, four cell phones, and jewelry worth $30,000 from within his house.[6] The pistol was located in a glass case, which was also taken. Behind the house, the burglar stripped three cars: a 1964 Chevrolet Impala, 1970 Pontiac Ventura, and a 1968 Mazda. The carburetors, manifolds, distributors, and valve covers were taken off the engines. In addition, air tools, air tanks, and a pressure washer were stolen.
The burglar also stole Sayles's Cadillac, which was recovered approximately eight days after the burglary. Sayles testified he saw A.M.W. driving the Cadillac about thirty minutes after he discovered the burglary, but he did not mention this sighting to the sheriff's deputies investigating the burglary until two weeks later.
*567 Sayles saw A.M.W. at an auto shop down the street and found his Pontiac's auto parts there. Ben Brinson, the owner of the shop, testified that A.M.W. brought the parts into his shop to sell them. The parts included valve covers, intakes, distributors, and carburetors. Brinson knew A.M.W. because A.M.W. periodically worked at the shop.
Sayles found two IDs, including one belonging to A.M.W., at his house. At trial, he claimed he found both in a wallet in his bedroom. Both deputies testified that, when Sayles turned in the IDs, he said he found A.M.W.'s ID near one of the cars and found the other ID in his bedroom. The State rested, and the court denied A.M.W.'s motions to dismiss.
A.M.W. testified his IDs had been lost or stolen several times, and he lost the ID in evidence around the time the burglary occurred. He denied working for Brinson, had never been near Sayles's home, and was a mechanic. A.M.W. brought the car parts into Brinson's shop so that he could put them on his antique 1987 Monte Carlo. However, his car had been impounded. A.M.W. first claimed his car was impounded after he bought the parts. He changed his mind; it was impounded before he bought the parts. A.M.W. changed his mind again; his car was impounded while he was buying the parts, so he had to walk with the parts to the auto shop. He kept the parts because, though he did not have enough money to get his car out of impound, he planned to buy another. A.M.W. changed his mind once more; he bought the parts a couple of days before the car was impounded.
The court denied A.M.W.'s renewed motions to dismiss and ruled:
There are four essential facts ... that point to the defendant's guilt. . . . And that is that the items ... the burglar. . . was a mechanic, because that person had enough mechanical skill to disassemble an engine.
* * *
Then we have the identification cards found on the scene. And it doesn't really matter to me whether they're found inside or outside.
Then there's the issue of the victim's testimony that he saw the defendant driving his Cadillac 30 minutes after the burglary. Well, that would be pretty dispositive, but I . . . have an issue with why ... it took him 14 days to tell somebody that.
... I don't know what's up with that, so I'm kind of putting that aside. The other parts were in the possession of the defendant.
. . . Brinson, who appears to be about as... uninterested [sic] a party as there is in this ... he was pretty straightforward. . . . And he didn't say anything about the defendant having brought those parts to him for the purpose of putting on an automobile.
. . . Brinson testified that the defendant said that he was trying to sell those parts. That's inconsistent with the defendant's testimony.
And ... the defendant's testimonyit really is incredulous [sic]is that when he realized that his car had been impounded and he had those parts, he was planning on buying another car and using those parts on it. I guess that meant he was going to ... look for a car that needed exactly those parts.
I mean that doesn't make a bit of sense to me. . . .
And I do find that the defendant committed the offenses.
The court found A.M.W. guilty of the lesser-included offense of third-degree grand theft because the State did not establish *568 that the stolen property's value exceeded $20,000. The court expressly disbelieved the explanation that someone planted A.M.W.'s ID at the scene.
The purpose of a motion for judgment of acquittal, termed in this context as a motion to dismiss, is to test the legal sufficiency of the State's evidence. State v. Lalor, 842 So.2d 217, 219 (Fla. 5th DCA 2003) (citing Donovan v. State, 821 So.2d 1099, 1100 (Fla. 5th DCA 2002)). The defendant moving for judgment of acquittal admits all facts and evidence adduced at trial, and the court views all reasonable inferences from the evidence in favor of the State. Id. (citing Donovan, 821 So.2d at 1100). We note that, where the evidence is entirely circumstantial, no matter how strongly it might suggest guilt, a conviction may not be upheld unless the evidence is inconsistent with any reasonable hypothesis of innocence. E.T.R v. State, 873 So.2d 571, 572 (Fla. 2d DCA 2004). The State need not rebut every variation of events that could be inferred from the evidence, but must introduce competent evidence inconsistent with the defendant's theory of events. Haugabrook v. State, 827 So.2d 1065, 1068 (Fla. 2d DCA 2002). Once the State introduces competent evidence inconsistent with the defendant's theory, the court must review that evidence in a light most favorable to the State to determine the presence of competent evidence from which the jury could infer guilt to the exclusion of all other inferences. Id.; E.T.R., 873 So.2d at 572. If the State meets its burden, it becomes the duty of the trier of fact to determine whether the evidence is sufficient to exclude every reasonable hypothesis of innocence beyond a reasonable doubt. Haugabrook, 827 So.2d at 1068.
Here, A.M.W.'s possession of property stolen from outside Sayles's home justifies the presumption arising from the possession of recently stolen property, on the ground that the thefts here occurred during a single course of conduct. "[U]nexplained possession of recently stolen property is not only sufficient to support a theft conviction, but when a burglary necessarily occurs as an adjunct, the inference of guilt from the unexplained possession of the recently stolen goods also supports a conviction for burglary." Francis v. State, 808 So.2d 110, 134 (Fla. 2001) (quoting T.S.R. v. State, 596 So.2d 766, 767 (Fla. 5th DCA 1992)); see also Barnlund v. State, 724 So.2d 632, 633 (Fla. 5th DCA 1998) (noting that "possession of recently stolen property is sufficient to give rise to an inference not only that he stole the property, but that he committed the burglary which was necessary to accomplish the theft"); J.J.H. v. State, 651 So.2d 1239, 1241 (Fla. 5th DCA 1995) (reversing where State presented no evidence other than an inadmissible hearsay statement that defendant entered home). A.M.W.'s explanation for his possession of recently stolen items was a question of fact to be resolved by the trier of fact. Francis, 808 So.2d at 134; Barnlund, 724 So.2d at 633.
The testimony established that A.M.W. possessed several of the auto parts stolen during the theft and burglary that occurred on 9 March 2004. The recovery of his ID at the scene of the crime constituted further competent evidence that he committed the burglary. See Riggins v. State, 898 So.2d 1025, 1026 (Fla. 4th DCA 2005) (noting that the burglar took a shower at the home, and a pair of pants containing defendant's ID was found in the home). Because the explanation's reasonableness was a question to be decided by the trier of fact, and because the court disbelieved A.M.W.'s testimony regarding his acquisition of the auto parts, the evidence was sufficient to support the adjudications on armed burglary. See Francis, 808 So.2d at 134. Similarly, the State *569 presented Sayles's testimony that various items, including a firearm, were stolen from his home. His trial testimony alleged that A.M.W.'s ID was found in his bedroom. See Lalor, 842 So.2d at 220. This testimony was legally sufficient to preclude a judgment of acquittal on the grand theft of a firearm charge. Id.; Riggins, 898 So.2d at 1026.
In sum, the evidence, viewed in the light most favorable to the State, was inconsistent with A.M.W.'s theory of innocence. The discovery of his ID, his possession of the auto parts, and the trial testimony of Sayles and Brinson constituted competent, substantial evidence from which the trier of fact could find that the elements of the crimes were established beyond a reasonable doubt, without an undue pyramiding of inferences. See Bender v. State, 890 So.2d 538, 539 (Fla. 4th DCA 2005) (affirming conviction because, where defendant possessed stolen checks from the burglarized home, the case involved a number of facts from which one inference was made).
A.M.W. next argues that most of his delinquency adjudications should be vacated because they violate double jeopardy. A.M.W. contends that double jeopardy bars his conviction for grand theft auto, but the Florida Supreme Court has rejected that argument in similar circumstances.
[I]in reaching a determination of the double jeopardy issue in a case involving a single victim's property, courts should look to whether there was a separation of time, place, or circumstances between the initial armed robbery and the subsequent grand theft, as those factors are objective criteria utilized to determine whether there are distinct and independent criminal acts or whether there is one continuous criminal act with a single criminal intent. In making this determination of whether there is a separation of time, place, or circumstances giving rise to distinct and independent acts, the courts should consider the location of the items taken, the lapse of time between takings, the number of owners of the items taken, and whether intervening events occurred between the takings.
Hayes v. State, 803 So.2d 695, 704 (Fla. 2001).
In Hayes, the supreme court held that a robbery inside the house and theft of the vehicle outside constituted separate crimes. Although there was only one victim, and no intervening acts occurred, the "robbery of various items from inside the residence was sufficiently separate in time, place and circumstances from Hayes' theft of the motor vehicle parked outside the victim's residence to constitute distinct and independent criminal acts." Hayes, 803 So.2d at 704. Similarly, though Sayles was the only victim in this case, and there is no evidence suggesting intervening acts occurred, we conclude the theft of various items inside and behind Sayles' house were sufficiently separate in time, place, and circumstances from the theft of the Cadillac.
However, A.M.W. correctly asserts he may not be convicted of both third-degree grand theft and dealing in stolen property. A.M.W. was adjudicated delinquent for third-degree grand theft for stealing, among other things, auto parts. He was also adjudicated delinquent for dealing in stolen property, i.e., auto parts. It is well-settled that, while the State may charge both, only one conviction may stand. Hall v. State, 826 So.2d 268, 271 (Fla.2002); Hale v. State, 838 So.2d 1185, 1189 (Fla. 5th DCA 2003); T.S.R. v. State, 596 So.2d 766, 767-68 (Fla. 5th DCA 1992); § 812.025, Fla. Stat. (2003). This remains the case even where only some of the property alleged stolen is dealt. See Corvo v. State, 916 So.2d 44, 46 (Fla. 3d DCA 2005) (rejecting the argument the State *570 makes here and reversing sentence of grand theft); Toson v. State, 864 So.2d 552, 554-55 (Fla. 4th DCA 2004) (vacating convictions under section 812.025 though several items stolen were not alleged to be dealt). The grand theft and dealing charges all involved property stolen during a single burglary of Sayles's home. Thus, we vacate the third-degree grand theft adjudication involving auto parts.
Finally, A.M.W. correctly argues that, under Wilson v. State, 776 So.2d 347 (Fla. 5th DCA 2001), and Scarola v. State, 889 So.2d 108 (Fla. 5th DCA 2004) (en banc), he may not be convicted of both third-degree grand theft of a firearm and third-degree grand theft for other items, when both charges arise from the same burglary. We follow Wilson and Scarola and hold that, as to the grand theft of a firearm and the grand theft of jewelry and auto parts charges, one adjudication must be vacated.[7] That count, in turn, is vacated in light of the adjudication for dealing in stolen property. As a result, we affirm the adjudications for armed burglary with a firearm, grand theft of a motor vehicle, and dealing in stolen property. Though A.M.W. has already completed his sentence, we vacate the adjudications for grand theft of a firearm and third-degree grand theft because of the effect it may have upon future sentencing. See Hagan v. State, 853 So.2d 595, 597 (Fla. 5th DCA 2003); Lamb v. State, 526 So.2d 998 (Fla. 1st DCA 1988).
AFFIRMED in part; REVERSED in part.
GRIFFIN and MONACO, JJ., concur.
NOTES
[1] §§ 810.02(b); 775.087(2), Fla. Stat. (2003).
[2] § 812.014(2)(c)(5), Fla. Stat. (2003).
[3] § 812.014(2)(b), Fla. Stat. (2003). The petition on count three alleged the theft of "jewelry, automobile equipment or other household items" valued at more than $30,000.
[4] § 812.014(2)(c)(6), Fla. Stat. (2003).
[5] § 812.019(1), Fla. Stat (2003). The petition on count five alleged dealing in the automobile equipment that was the subject of count three.
[6] Sayles's testimony regarding the stolen property's value was thoroughly impeached.
[7] We recognize that the Fourth District certified conflict with Wilson in Kelso v. State, 898 So.2d 1023, 1023-25 (Fla. 4th DCA 2005).